UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

CARGO LOGISTICS INTERNATIONAL,
LLC,

                            Plaintiff,

          v.

OVERSEAS MOVING SPECIALISTS,
INC. and BOAZ AVIANI,

                          Defendants.

---------------------------------------------------------------

**MEMORANDUM & ORDER**
20-CV-2130 (MKB)

MARGO K. BRODIE, United States District Judge:

       Plaintiff Cargo Logistics International, LLC ("Cargo Logistics") commenced the above-captioned action on May 11, 2020, against Defendants Overseas Moving Specialists, Inc. ("Overseas Moving") and its owner, president, and chief executive, Boaz Aviani, alleging breach of maritime contract, negligent misrepresentation, and fraud.  (Compl., Docket Entry No. 1; Am. Compl., Docket Entry No. 14.)  Plaintiff alleges that Overseas Moving hired it to ship cargo to Ashdod, Israel, but inaccurately described the cargo in the bill of lading, and ultimately, when the consignee, Tevel Logistics, Ltd. ("Tevel") failed to take delivery of the cargo, Defendants refused to declare the cargo abandoned for over a year and refused to pay the associated fees, (Am. Compl. ¶¶ 14–30, 37–45), resulting in Plaintiff's temporary loss of shipping privileges with nonparty Zim Shipping Line ("Zim"), (*id.* ¶¶ 31–36).[1]

---

[1]  Plaintiff invokes the Court's admiralty jurisdiction, 28 U.S.C § 1333, as the sole basis for subject matter jurisdiction.  (*Id.* ¶ 4.)

Defendants move to dismiss all claims against Aviani, the negligent misrepresentation and fraud claims against Overseas Moving, and all claims for lost profits.[2]  For the reasons set forth below, the Court grants the motion in part and denies it in part.

## I.   Background

The Court assumes the truth of the factual allegations in the Amended Complaint for the purposes of this Memorandum and Order.

Plaintiff is a non-vessel-owning common carrier ("NVOCC"), that books space with vessel-owning carriers to ship items overseas.  (*Id.* ¶¶ 10–12.)  Plaintiff assumes responsibility for shipments under bills of lading that it issues.[3]  (*Id.* ¶ 12.)  Overseas Moving is also an NVOCC and Aviani owns and controls its daily operations.  (*Id.* ¶ 7.)

On June 30, 2017, Overseas Moving booked a shipment of cargo with Plaintiff, describing the cargo as "202 pieces of medical and office equipment, 'For Personal Use Only Not for Resale No Commercial Value,'" to be shipped from New York to Ashdod, Israel, for consignment to Tevel.  (*Id.* ¶¶ 14, 18.)  Plaintiff relied on this description and contends that it "had no way of knowing what was in the container containing the [c]argo because the container was sealed when received."  (*Id.* ¶ 18.)

---

[2]  (Defs.' Mot. to Dismiss in Part ("Defs.' Mot."), Docket Entry No. 19; Defs.' Mem. in Supp. of Defs.' Mot. ("Defs.' Mem."), Docket Entry No. 19-1; Pl.'s Mem. in Opp'n to Defs.' Mot. ("Pl.'s Mem."), Docket Entry No. 20; Defs.' Reply in Supp. of Defs.' Mot. ("Defs.' Reply"), Docket Entry No. 21.)

[3]  Plaintiff maintains a tariff, a legally binding schedule of its "rates, charges, classifications, rules, practices and routes," which is "open to public inspection."  (Am. Compl. ¶ 13.)

2

### i.   Bill of lading

Plaintiff shipped the cargo on a ship operated by Zim pursuant to a bill of lading dated

July 22, 2017.  (*Id.* ¶ 19.)  The bill of lading described the goods to be shipped and states in

relevant part:

> 9. (Description and Particulars of Goods) Any reference on the face
> of this [b]ill of [l]ading to marks, numbers, description, quantity,
> quality, gauge, weight, measure, nature, kind, value, and any other
> particulars of the [g]oods, is as furnished by the Merchant [defined
> as the shipper, consignor, consignee, owner, and receiver of the
> goods].  [Plaintiff] shall not be responsible for the accuracy of any
> such reference and is not bound thereby.  The Merchant warrants to
> [Plaintiff] that the descriptions and particulars furnished by him are
> correct, and the Merchant shall indemnify [Plaintiff] against all loss,
> damage, expenses, liability, penalties and fines arising or resulting
> from inaccuracy of any description or particular.

(Bill of Lading 2, annexed to Am. Compl. as Ex. G, Docket Entry No. 14-7; *see* Am. Compl.

¶ 40.)[4]  The bill of lading also provides information about indemnification and states in relevant

part:

> 24. (Freight and Charges) . . . (F) The Merchant shall be liable for
> and shall indemnify the Ocean Carrier against: (1) all dues, duties,
> taxes, consular fees, and other charges levied on the [g]oods, and
> (2) all fines, damages and losses sustained by the Ocean Carrier in
> connection with [g]oods, howsoever caused, . . . .  (H) The shipper,
> consignor, consignee, owner of the Goods and holder of this [b]ill
> of [l]ading shall be jointly and severally liable to the Ocean Carrier

---

[4]  The Court considers the bill of lading and several emails between Plaintiff and
Defendants because they are attached to the Amended Complaint and incorporated by reference.
*See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230–31 (2d Cir. 2016) (holding that courts may
consider on a motion to dismiss "any written instrument attached to [the complaint] as an exhibit
or any statements or documents incorporated in it by reference" and other documents "integral"
to the complaint (first quoting *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002);
and then quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010))); *L-7
Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) ("A complaint is [also]
deemed to include any written instrument attached to it as an exhibit, materials incorporated in it
by reference, and documents that, although not incorporated by reference, are 'integral' to the
complaint." (alteration in original) (quoting *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004))).

for the payment of all freight and charges and for the performance
of the obligations of any of them under this [b]ill of [l]ading.

(Bill of Lading 2; *see* Am. Compl. ¶ 39.)  The bill of lading also provides that "[i]f the [g]oods

are unclaimed during a reasonable time . . . [Plaintiff] (without responsibility to it) may at its

discretion and subject to its lien, sell, abandon, or otherwise dispose of such [g]oods at the sole

risk and expense of the Merchant."  (Bill of Lading 2; Am. Compl. ¶ 41.)

Plaintiff shipped the cargo pursuant to its tariff, which provides that:

Any and all charges that are incurred are the responsibility of
booking party which includes any and all charges related to
abandonment including but not limited to: Demurrage, storage, port
or forwarding charges plus a 15% admin fee and a $750.00 USD
abandonment surcharge per container.

All charges will be presented in the form of an abandonment invoice
to the booking party (Shipper) and this abandonment invoice is
payable immediately.

If abandonment invoice is not paid within 5 business days of receipt
then a 33% surcharge will be added.

If legal representation must be consulted or retained for collection
of these funds or any other need surrounding abandonment of cargo,
booking party will be liable for all legal fees plus 15% legal admin
fee.

(Am. Compl. ¶¶ 13, 41.)

### ii.  Arrival of cargo in Ashdod

The cargo arrived in Ashdod in mid-August of 2017, and despite several requests from

Plaintiff, Tevel did not accept the cargo.  (*Id.* ¶ 22.)  Plaintiff "made multiple demands" on

Overseas Moving to have the cargo claimed or deemed abandoned and destroyed so that the

container could be returned to Zim.  (*Id.*)  On September 6, September 15, September 21,

October 2, October 9, October 12, October 18, and October 19, 2017, Overseas Moving

represented to Plaintiff that the cargo was not abandoned and that Tevel was gathering

documents necessary for customs clearance.  (*Id.*; *see also* Email Correspondence, annexed to Am. Compl. as Ex. K, Docket Entry No. 14-11.)  On October 19, 2017, Tevel denied any connection to the cargo.  (Am. Compl. ¶ 23; Letter from Tevel dated Oct. 19, 2017, annexed to Am. Compl. as Ex. L, Docket Entry No. 14-12.)  On October 31, 2017, Overseas Moving emailed Aviani and other Overseas Moving employees, copying Plaintiff, "asking to 'advise' as to what to do."  (Am. Compl. ¶ 23; Email from Overseas Moving dated Oct. 31, 2017, at 3, annexed to Am. Compl. as Ex. M, Docket Entry No. 14-13.)

After November 20, 2017, Plaintiff received a packing list reflecting that the cargo consisted of "nearly all the equipment, files, and office equipment" from the Massachusetts office of medical device manufacturer DirexGroup.  (Am. Compl. ¶¶ 16–18, 22.)  Based on the packing list, Plaintiff contends that (1) the cargo was misleadingly described as for personal use, when in fact it was business property from DirexGroup, (2) the incorrect description caused difficulties in clearing Israeli customs, and (3) Aviani personally directed Overseas Moving's response.  (*Id.* ¶ 24.)

Because of Plaintiff's continued use of the container, Zim charged Plaintiff demurrage.[5] (*Id.* ¶ 25.)  On November 30, 2017, Plaintiff sent Overseas Moving an abandonment letter for signature "so that the [c]argo could be destroyed and the container returned to Zim."  (*Id.* ¶ 26.) Overseas Moving refused to sign the letter at Aviani's direction, and demurrage and storage fees continued to accrue.  (*Id.* ¶¶ 26–27.)  Zim "refused to do anything with" the cargo without an

---

[5] Zim began charging demurrage after "some 'free time'" passed, (Am. Compl. ¶ 25), and charged demurrage of $33 per day between August 25 and August 29, $50 per day from August 30 to September 14, and $58 per day thereafter, as well as storage, administrative, and other fees, (Invoice from Zim, annexed to Am. Compl. as Ex. R, Docket Entry No. 14-18).

abandonment letter signed by Overseas Moving and continued to seek payment of fees from Plaintiff.  (*Id.* ¶ 28.)

On December 19, 2017, Plaintiff demanded that Overseas Moving pay $16,093.45 in accrued fees, copying Aviani and a bond company on the correspondence.  (*Id.* ¶ 29.) Defendants ignored the demand until February 23, 2018, when they (or their bond company) refused the claim through counsel.[6]  (*Id.*)

On January 30, 2018, Plaintiff informed Defendants that Zim was refusing further shipments from Plaintiff until Plaintiff returned its container free of Defendants' cargo.  (*Id.* ¶¶ 34–36; *see also* Email from Pl.'s Chief Logistics Officer dated Jan. 30, 2018, annexed to Am. Compl. as Ex. P, Docket Entry No. 14-16.)  Plaintiff contends that it lost $250,000 in profits because it could not offer competitive rates on cargo shipped from the United States to the Mediterranean.  (Am. Compl. ¶¶ 35, 45.)

On May 3, 2019, Aviani signed a letter in which Overseas Moving "agreed to abandonment" of the cargo.  (*Id.* ¶ 36.)  The letter did not resolve the outstanding fees.  (*Id.*)  On July 2, 2019, Zim accepted an abandonment letter from Plaintiff, the cargo was then destroyed, and Plaintiff returned the container to Zim.  (*Id.*)  Plaintiff "resolved the outstanding demurrage and storage fees," and, on August 6, 2019, regained the right to use Zim to carry cargo.  (*Id.*) Plaintiff contends that from the initial abandonment of the cargo through its disposal, it has incurred $165,140.00 in costs, which Overseas Moving has refused to pay.  (*Id.* ¶¶ 43–45.)  In addition, Plaintiff claims that Overseas Moving is liable for Plaintiff's $250,000.00 lost profits

---

[6] While the cargo was sitting in Ashdod, Plaintiff sought to resolve its dispute by using the Federal Maritime Commission's Dispute Resolution Services but was unsuccessful.  (Am. Compl. ¶ 30; *see also* Dispute Services Resolution Request, annexed to Am. Compl. as Ex. N, Docket Entry No. 14-14.)

from the period in which it could not ship cargo with Zim, $165,140.00 in charges incurred for the abandoned cargo, and interest, attorneys' fees, court costs and legal administration fees. (*Id.* ¶ 45.)

## II.   Discussion

### a.   Standard of review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)); *see also Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Pension Benefit Guar. Corp. ex rel. Saint Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

### b.   Plaintiff's negligent misrepresentation and fraud claims

Defendants argue that Plaintiff does not state a cause of action for negligent misrepresentation because: (1) the parties did not have a special relationship, as is required to bring such a claim, (2) Plaintiff did not sufficiently allege that Defendants knowingly made false

representations, (3) Plaintiff did not sufficiently allege reliance, and (4) Plaintiff's negligent misrepresentation claim is duplicative of its breach of contract claim.  (Defs.' Mem. 11–15.) Defendants also argue that Plaintiff's fraud claim should be dismissed because it is duplicative of its contract claim and because Plaintiff did not adequately allege Defendants' intent to defraud. (*Id.* at 16–18.)

Plaintiff contends that it has stated a negligent misrepresentation claim because (1) Plaintiff and Overseas Moving were in privity of contract, establishing the necessary special relationship, (2) Defendants made factual misrepresentations regarding the description of the cargo and the status of the cargo at the port in Ashdod, (3) it relied on both misrepresentations in deciding to ship the cargo and to keep paying fees at the port, and (4) Defendants engaged in a separate breach of duty by mis-describing the cargo, and therefore the negligent misrepresentation claim was not duplicative of the fraud claim.  (Pl.'s Opp'n 11–14.)  As to its fraud claims, Plaintiff argues that they are not duplicative.  Plaintiff identifies the fraudulent acts as (1) Overseas Moving's description of the cargo as "202 pieces of medical and office equipment, 'For Personal Use Only Not for Resale No Commercial Value,'" when the cargo was actually DirexGroup's business equipment, and (2) Overseas Moving's false representations "that the cargo was being cleared through customs and not abandoned" while it was at the port in Ashdod.  (*Id.* at 14–17.)  In addition, Plaintiff contends that Aviani directed the false statements to be made.  (*Id.* at 15, 17.)

As discussed below, while the Court does not have admiralty tort jurisdiction over the tort claims, the Court exercises supplemental jurisdiction based on the Court's admiralty jurisdiction over Plaintiff's contract claim, and in doing so, finds that Plaintiff fails to state a claim for negligent misrepresentation but states a fraud claim against Defendants based on the

allegations that Overseas Moving misled Plaintiff about the status of the cargo after it arrived in Ashdod.[7]

### i. The Court lacks admiralty tort jurisdiction but exercises supplemental jurisdiction over Plaintiff's tort claims

In order for a court to exercise jurisdiction over an admiralty tort claim, the alleged tort must have "occurred on navigable water or [have been] caused by a vessel on navigable water," — the location test, and "the general type of incident involved [must have] a potentially disruptive effect on maritime commerce," and "the general character of the activity giving rise to the incident [must] bear[] a substantial relationship to traditional maritime activity," — the connection test (the "*Grubart* test").[8]  *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 248 (2d Cir. 2014) (citing *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.* ("*Grubart*"), 513 U.S. 527, 534 (1995)).  A plaintiff must satisfy both the location and the connection portions of the *Grubart* test; the court cannot exercise jurisdiction if the plaintiff fails to satisfy either.  *See Great Lakes Ins. SE v. Am. S.S. Owners Mut. Prot.*, 848 F. App'x 51, 52–53 (2d Cir. 2021) (explaining that the plaintiff failed to "satisfy the location test" and therefore the court had no jurisdiction because "neither [the] [d]efendants' associated conduct nor [the] plaintiff's] injury occurred on navigable water, and [the plaintiff's] 'injury suffered on land' was

---

[7]  In their memorandum of law in support of their motion to dismiss, Defendants rely on New York law, and Plaintiff cites to cases applying both federal maritime law and New York law.  (*See, e.g.*, Defs.' Mem. 6; Pl.'s Opp'n 12.)  Because the parties did not engage in a choice of law analysis and do not agree as to which law applies, the Court determines the law that applies in addressing the merits of the claims.  *See NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*, No. 10-CV-5762, 2013 WL 489020, at *5 (S.D.N.Y. Feb. 8, 2013) (conducting choice of law analysis where "[t]he parties cite[d] to both Delaware and New York law but [did] not address choice of law"), *vacated and remanded on other grounds*, 801 F.3d 92 (2d Cir. 2015).

[8]  The Supreme Court "formalized the current test for admiralty tort jurisdiction in *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995)."  *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 246 (2d Cir. 2014).

not 'caused by a vessel on navigable water'" (quoting *Grubart*, 513 U.S. at 534)); *Golden Horn Shipping Co. v. Volans Shipping Co.*, No. 14-CV-2168, 2015 WL 1344374, at *3 (S.D.N.Y. Mar. 23, 2015) (explaining that "if the tort did not occur on navigable water and the injury was not caused by a vessel on navigable water, then maritime law does not apply" and the "claim [was] not within the [c]ourt's admiralty jurisdiction" (quoting *Abbud v. City of New York*, No. 96-CV-0521, 1997 WL 633463, at *5 (S.D.N.Y. Oct. 10, 1997))), *objections overruled*, 2015 WL 6684518 (S.D.N.Y. June 30, 2015); *W. Bulk Carriers KS v. Centauri Shipping Ltd.*, No. 11-CV-5952, 2013 WL 1385212, at *4 (S.D.N.Y. Mar. 11, 2013) (finding that "[the] [p]laintiff's wrongful attachment claim clearly falls outside the scope of admiralty jurisdiction" because the "allegedly tortious conduct — [the] [d]efendant's misrepresentation . . . — neither occurred on navigable waters nor was caused by a vessel on such waters" and "therefore fails to satisfy the locality requirement for maritime torts").

Plaintiff has failed to allege that the tort claims for negligent misrepresentation and fraud occurred on navigable water, and Plaintiff does not allege that they were caused by a vessel on navigable water.  Instead, Plaintiff alleges that Defendants made false statements on the bill of lading before the cargo shipped and in emails to Plaintiff after the cargo arrived in Ashdod. (Am. Compl. ¶¶ 50–68); *see Great Lakes Ins. SE v. Am. Steamship Owners Mut. Prot. & Indem. Ass'n Inc.*, No. 19-CV-10656, 2020 WL 4547218, at *9 (S.D.N.Y. Aug. 6, 2020) (holding that admiralty tort jurisdiction was not proper over the plaintiff's tort claims because "[the] [d]efendants' conspiracy to abandon the [v]essel and terminate its insurance did not occur 'on navigable waters,'" and therefore "[the plaintiff's] injury was not caused by a vessel on navigable waters, but rather, it was caused by [the] [d]efendants' land-based torts"), *aff'd sub nom. Great Lakes Ins. SE v. Am. Steamship Owners Mut. Prot.*, 848 F. App'x 51 (2d Cir. 2021).

10

Therefore, the Court does not have admiralty jurisdiction over Plaintiff's tort claims and does not apply maritime law to these claims.[9]  However, although Plaintiff only asserts admiralty jurisdiction pursuant to 28 U.S.C. § 1333, (Am. Compl. ¶ 4), the allegations in the Complaint also support the exercise of pendent jurisdiction and the Court therefore exercises supplemental jurisdiction over Plaintiff's tort claims.  *See Nilsen v. Prudential–Bache Sec.*, 761 F. Supp. 279, 293 (S.D.N.Y. 1991) ("[T]here is no need specifically to plead pendent jurisdiction when it is clear that plaintiff's federal and state claims derive from a 'common nucleus of operative fact.'" (quoting *Carlo C. Gelardi Corp. v. Miller Brewing Co.*, 421 F. Supp. 237, 241 (D.N.J. 1976))). Federal courts may exercise supplemental jurisdiction when federal claims and state claims "stem from the same 'common nucleus of operative fact.'"  *Montefiore Med. Ctr. v. Teamsters Loc. 272*, 642 F.3d 321, 332 (2d Cir. 2011) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)); *see* 28 U.S.C. § 1367(a).  Plaintiff's negligent misrepresentation and fraud claims arise out of the same events — the cargo's shipment and its subsequent abandonment in Ashdod — as Plaintiff's breach of contract claim.

### ii.   Plaintiff fails to state a negligent misrepresentation claim

Defendants argue that Plaintiff does not state a cause of action for negligent misrepresentation because the parties did not have a special relationship, Plaintiff did not sufficiently allege that Defendants knowingly made false representations, Plaintiff did not

---

[9]  Because Plaintiff's tort claims did not occur on navigable water and were not cause by a vessel on navigable water, thereby defeating any claim of maritime jurisdiction, the Court does not analyze the relationship of the alleged torts to maritime activity.  *See Great Lakes Ins. SE v. Am. Steamship Owners Mut. Prot.*, 848 F. App'x 51, 53 (2d Cir. 2021) ("Because Great Lakes' claims do not satisfy the location test, we need not determine whether they satisfy the maritime connection test.").

sufficiently allege reliance, and this claim is duplicative of its breach of contract claim.  (Defs.'
Mem. 11–15.)

Plaintiff contends that the contract between Plaintiff and Overseas Moving is sufficient to
establish the necessary special relationship, Defendants made specific factual misrepresentations
on which Plaintiff relied, and that the negligent misrepresentation claim is not duplicative of the
breach of contract claim.  (Pl.'s Opp'n 11–14.)

Under New York law, a negligent misrepresentation claim requires a plaintiff to show
"(1) the existence of a special or privity-like relationship imposing a duty on the defendant to
impart correct information to the plaintiff; (2) that the information was incorrect; and
(3) reasonable reliance on the information."[10]  *ICD Cap., LLC v. CodeSmart Holdings, Inc.*, 842
F. App'x 705, 706 (2d Cir. 2021) (quoting *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d
473, 490 (2d Cir. 2014)).

The New York Court of Appeals has explained that:

> It is well settled that "[a] claim for negligent misrepresentation
> requires the plaintiff to demonstrate (1) the existence of a special or
> privity-like relationship imposing a duty on the defendant to impart
> correct information to the plaintiff; (2) that the information was
> incorrect; and (3) reasonable reliance on the information."

*Abu Dhabi Com. Bank v. Morgan Stanley & Co.*, 910 F. Supp. 2d 543, 546 (S.D.N.Y. 2012)
(alteration in original) (quoting *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 180

---

[10]  The Court applies New York law because the Court lacks maritime jurisdiction over
Plaintiff's tort claims, and the only non-maritime source of law the parties cite is New York
law.  *See Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) ("The parties'
briefs assume that New York law controls, and such 'implied consent . . . is sufficient to
establish choice of law.'" (quoting *Tehran–Berkeley Civil & Env't Eng'rs v. Tippetts–Abbett–
McCarthy–Stratton*, 888 F.2d 239, 242 (2d Cir. 1989))); *Holliday as Tr. of LB Litig. Tr. v. Brown
Rudnick LLP*, No. 19-CV-10925, 2020 WL 4340786, at *8 (S.D.N.Y. July 28, 2020) ("[B]oth
parties apply New York law in their submissions, and the [c]ourt agrees that such law applies
. . . .").

(2011)); *see also Dall. Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 788 (2d Cir. 2003)

("[T]he elements of negligent representation are: (1) carelessness in imparting words; (2) upon

which others were expected to rely; (3) and upon which they did act or failed to act; (4) to their

damage . . . [(5)] to one whom the declarant is bound by some relation or duty of care." (citing

*White v. Guarente*, 43 N.Y.2d 356, 401 (1977))).

 A duty of care may arise when "there is actual privity of contract between the parties or a

relationship so close as to approach that of privity." *Aetna Cas. & Sur. Co. v. Aniero Concrete

Co.*, 404 F.3d 566, 584 (2d Cir. 2005) (per curiam) (quoting *Ossining Union Free Sch. Dist. v.

Anderson LaRocca Anderson*, 73 N.Y.2d 417, 424 (1989)).  The Second Circuit has noted that

although some of its prior decisions "state that a negligent misrepresentation claim will not lie

unless the parties share a fiduciary or otherwise 'special' relationship, [those decisions] cannot

be read to preclude such a cause of action brought on grounds of privity or near-privity." *Id.* at

584 n.15; *see also Aaronson v. Kellogg Co.*, 837 F. App'x 850, 851 n.3 (2d Cir. 2021) ("New

York strictly limits negligent misrepresentation claims to situations involving actual privity of

contract between the parties or a relationship so close as to approach that of privity." (quoting

*Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 114 (2d Cir. 2012))).  "Courts have

reconciled the discrepancy in the caselaw by recognizing a fiduciary duty as one, but not the

exclusive, basis for a negligent misrepresentation claim." *Aetna Cas. & Sur. Co.*, 404 F.3d 566

at 584 n.15 ("A fiduciary relationship may be a sufficient condition to support a claim for

negligent misrepresentation absent the existence of actual privity; however, it is not a necessary

condition . . . ." (quoting *In re Leslie Fay Cos.*, 918 F. Supp. 749, 769 (S.D.N.Y. 1996))).  A

relationship is considered "so close as to approach that of privity" if: (1) "the defendant makes a

statement with the awareness that the statement was to be used for a particular purpose"; (2) "a

known party or parties rely on this statement in furtherance of that purpose"; and (3) "there is some conduct by the defendant linking it to the party or parties and evincing [the] defendant's understanding of their reliance."  *Id.* at 584 (citing *Ossining Union Free Sch. Dist.*, 73 N.Y.2d at 425); *Patellos v. Hello Prod., LLC*, No. 19-CV-9577, 2021 WL 827769, at *8 (S.D.N.Y. Mar. 4, 2021) (quoting *Aetna Cas. & Sur. Co.*, 404 F.3d at 584).  However, "where the statement at issue is directed at a 'faceless [or] unresolved class [of] persons,' no duty of care arises."  *Aetna Cas. & Sur. Co.*, 404 F.3d at 584 (quoting *White*, 43 N.Y.2d at 361).

"Because 'casual' statements and contacts are prevalent in business, liability in the commercial context is 'imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the [plaintiff] such that reliance on the negligent misrepresentation is justified.'"  *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004) (quoting *Kimmell v. Schaefer*, 89 N.Y.2d 257, 264 (1996)); *see also Dall. Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 788 (2d Cir. 2003) ("[T]he law of negligent misrepresentation requires a closer degree of trust between the parties than that of the ordinary buyer and seller in order to find reliance on such statements justified."); *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-CV-4697, 2016 WL 6459832, at *8 (S.D.N.Y. Oct. 26, 2016) ("[T]he vast majority of arms-length commercial transactions, which are comprised of 'casual statements and contacts,' will not give rise to negligent misrepresentation claims." (quoting *Kimmell*, 89 N.Y.2d at 263)); *Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.*, 821 F. Supp. 2d 616, 623–24 (S.D.N.Y. 2011) ("To state a claim for negligent misrepresentation in connection with a commercial transaction, a plaintiff must plead justifiable reliance.").  When a plaintiff fails to allege the existence of a special relationship or the relationship is only "sparsely pled," the plaintiff must "emphatically allege[]

14

the other two factors enunciated in *Kimmell*" — "whether the person making the representation

held or appeared to hold unique or special expertise" and "whether the speaker was aware of the

use to which the information would be put and supplied it for that purpose." *Eternity Glob.*

*Master Fund Ltd.*, 375 F.3d at 188 (first quoting *Suez Equity Invs., L.P. v. Toronto-Dominion*

*Bank*, 250 F.3d 87, 103 (2d Cir. 2001); and then quoting *Kimmell*, 89 N.Y.2d at 264).

Plaintiff has failed to state a claim for negligent misrepresentation.  Plaintiff has alleged

an arms-length contractual business relationship between two NVOCCs — itself and Overseas

Moving.  While Plaintiff relied on Defendants' representations as to the contents of the cargo in

a sealed container, (Am. Compl. ¶ 18), Plaintiff does not allege "a closer degree of trust between

the parties than that of the ordinary buyer and seller," as required for a negligent

misrepresentation claim.  *Dall. Aerospace, Inc.*, 352 F.3d at 788 (concluding that the seller of an

aircraft engine did not need to disclose to the arms-length buyer that the engine was not

airworthy).  Because Plaintiff has not plausibly alleged the existence of a special relationship, the

Court dismisses its negligent misrepresentation claim against both Defendants for failure to state

a claim.

### iii.   Plaintiff's allegations sufficiently establish a fraud claim based on Defendants' statements after the cargo arrived in Ashdod

Defendants argue that Plaintiff's fraud claim should be dismissed because (1) it is

duplicative of its contract claim, (2) Plaintiff did not adequately allege Defendants' intent to

defraud, and (3) Plaintiff has not alleged any specific acts by Aviani constituting fraud.[11]  (Defs.'

Mem. 16–18, 21.)

---

[11]  Defendant also argues that Aviani was not a party to the contract and could not have
breached it and therefore the breach of contract claim must be dismissed against him.  (Defs.'
Mem. 21.)  Plaintiff has alleged facts suggesting that Overseas Moving, not Aviani, breached the
contract (*see generally* Am. Compl. ¶¶ 46–49), and does not name Aviani in the breach of

Plaintiff alleges that Defendants (1) made a false statement about the contents of the cargo in the bill of lading, and (2) made false statements about the status of the cargo when it arrived in Ashdod.  (Pl.'s Mem. 14–17.)  Plaintiff argues that Aviani was included in communications about how to handle the matter of the abandoned cargo and was responsible for the fraud because he informed Plaintiff and Zim that the cargo was not abandoned.  (*Id.* at 17.)

"Under New York law, the essential elements of a fraud claim include 'representation of a material existing fact, falsity, *scienter*, deception, and injury.'"  *Manning v. Utils. Mut. Ins. Co.*, 254 F.3d 387, 400 (2d Cir. 2001) (quoting *N.Y. Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 318 (1995)); *see also Cortes v. 21st Century Fox Am., Inc.*, 751 F. App'x 69, 72 (2d Cir. 2018) (stating the elements of a fraudulent misrepresentation claim).  "To state a claim for fraud under New York law, a plaintiff must allege (1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff."  *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 783 F.3d 395, 402 (2d Cir. 2015) (first citing *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006); and then citing *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001) (per curiam)); *Manning*, 254 F.3d at 400 (same (quoting *N.Y. Univ.*, 639 N.Y.S. 2d at 289)); *see also Cortes v. 21st Century Fox Am., Inc.*, 751 F. App'x at 72 (stating the elements of a fraudulent misrepresentation claim); *GEM Advisors,*

---

contract claim.  To the extent that Plaintiff's reference to "Defendants' material breach," (*id.* ¶ 49), implies that it is also suing Aviani for breach of contract, the Court finds that Plaintiff fails to state a claim as to Aviani.  *See McKnight as Tr. of Stacia L. McKnight Revocable Tr. v. 65 Dune Rd. LLC*, No. 19-CV-4172, 2020 WL 9816015, at *15 (E.D.N.Y. Nov. 16, 2020) (explaining that under New York law, "corporate officers may not be held personally liable on contracts of their corporations, provided they did not purport to bind themselves individually under such contracts" (quoting *Westminster Constr. Co. v. Sherman*, 554 N.Y.S.2d 300, 301 (App. Div. 1990))).

*Inc. v. Corporación Sidenor, S.A.*, 667 F. Supp. 2d 308, 333 (S.D.N.Y. 2009) ("The second element of fraud in New York is intent to defraud, or scienter, which includes knowledge of the falsity of the representation." (citing *Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank*, 57 F.3d 146, 153 (2d Cir. 1995))).  "At the pleading stage, to withstand a Rule 12(b)(6) challenge in federal court, [p]laintiffs must 'assert facts that plausibly support the inference of fraud.'"  *Lorely Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec. L.L.C.*, 797 F.3d 160, 171 (2d Cir. 2015) (quoting *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 360 (2d Cir. 2013)).

"[I]n conjunction with the facial plausibility standard of Rule 12(b)(6)," pleadings for common law fraud claims "must satisfy the heightened pleading standard set forth in Rule 9(b)" of the Federal Rules of Civil Procedure.  *Id.*  "Rule 9(b) requires that '[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.'"  *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25–26 (2d Cir. 2016) (alteration in original) (quoting Fed. R. Civ. P. 9(b)).  "[T]he particularity pleading requirements of [Rule 9(b)] . . . 'require[] that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent.'"  *Putnam Advisory Co.*, 783 F.3d at 402–03 (quoting *Eternity Glob. Master Fund Ltd.*, 375 F.3d at 187).  "In other words, 'Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud.'"  *United States ex rel. Polansky v. Pfizer, Inc.*, No. 04-CV-704, 2009 WL 1456582, at *4 (E.D.N.Y. May 22, 2009) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).  Rule 9(b) also states that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Lorely Fin. (Jersey) No. 3 Ltd.*, 797 F.3d at 171 (quoting Fed. R. Civ. P. 9(b)).  "But because 'we

must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on speculation and conclusory allegations[,] . . . [the] plaintiffs must allege facts that give rise to a strong inference of fraudulent intent.'" *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (first alteration in original) (quoting *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir. 1995))); *see also Lorely Fin. (Jersey) No. 3. Ltd.*, 797 F.3d at 171 ("[T]hough mental states may be pleaded 'generally,' [p]laintiffs must nonetheless allege facts 'that give rise to a strong inference of fraudulent intent.'" (quoting *Lerner*, 459 F.3d at 290)).  "A 'strong inference of fraudulent intent' may be established either '(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'"  *Honeyman v. Hoyt (In re Carter-Wallace, Inc., Sec. Litig.)*, 220 F.3d 36, 39 (2d Cir. 2000) (quoting *Shields v. Citytrust Bancorp*, 25 F.3d 1124, 1128 (2d Cir. 1994)).

In interpreting New York law, the Second Circuit has held that to maintain a claim for fraud based on intentionally false statements under a contract, "a plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform under the contract, or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract, or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996) (citations omitted); *see also Reddy v. Mangino*, No. 08-CV-4805, 2010 WL 2771836, at *2 (E.D.N.Y. July 13, 2010) (holding that the plaintiff's fraud claim based on "alleged intention not to perform [an] obligation under their agreement" was duplicative of the breach of contract claim); *Cougar Audio, Inc. v. Reich*, No. 99-CV-4498, 2000 WL 420546, at *6 n.4 (S.D.N.Y. Apr. 18, 2000) (explaining that the court follows the Second Circuit's rule in

*Bridgestone/Firestone, Inc.*, 98 F.3d at 20); *Did-it.com, LLC v. Halo Grp., Inc.*, 102 N.Y.S.3d 687, 688 (App. Div. 2019) (reversing the lower court's dismissal of fraud claim as duplicative where the plaintiff alleged that the defendant made "misrepresentations of present fact that were collateral to the [contract] and further allege[d] that these misrepresentations induced the plaintiff to enter into the [contract]").

Under New York law, "[a] corporate officer who participates in the commission of a tort may be held individually liable, . . . regardless of whether the corporate veil is pierced." *FLB, LLC v. Cellco P'ship*, 536 F. App'x 132, 133 (2d Cir. 2013) (quoting *Fletcher v. Dakota, Inc.*, 948 N.Y.S.2d 263, 267 (App. Div. 2012))); *Hempchain Farms, LLC v. Sack*, --- F. Supp. 3d ---, ----, 2021 WL 326607, at *5 (N.D.N.Y. Feb. 1, 2021) ("New York law is clear that 'corporate officers and directors may be held individually liable if they participated in or had knowledge of the fraud, even if they did not stand to gain personally[.]'" (alteration in original) (quoting *Polonetsky v. Better Homes Depot, Inc.*, 97 N.Y.2d 46, 55 (2001))); *Alpha Cap. Anstalt v. Oxysure Sys., Inc.*, 252 F. Supp. 3d 332, 339 (S.D.N.Y. 2017) (same) (quoting *White v. Nat'l Home Prot., Inc.*, No. 09-CV-4070, 2010 WL 1706195, at *5 (S.D.N.Y. Apr. 21, 2010)); *DER Travel Servs., Inc. v. Dream Tours & Adventures, Inc.*, No. 99-CV-2231, 2005 WL 2848939, at *13 (S.D.N.Y. Oct. 28, 2005) (collecting cases) ("Under New York law, a corporate officer or employee is not insulated from liability for their own acts of fraud by virtue of their status as a corporate officer or employee; there is no need to pierce the corporate veil in order to hold corporate officers or employees individually liable for their own acts of fraud."); *Westminster Constr. Co. v. Sherman*, 554 N.Y.S.2d 300, 301 (App. Div. 1990) ("Corporate officers may be held personally liable for personal torts committed in the performance of their duties for their corporation."). However, a corporate officer cannot be held liable for a tort merely by virtue of

his role at the defendant company.  *See Leon v. Shmukler*, 992 F. Supp. 2d 179, 194 (E.D.N.Y. 2014) (granting the defendants' motion to dismiss "given the absence of any specific allegations as to [the corporate officer's] precise role as [p]resident . . . and his involvement in the alleged misconduct"); *Simon v. Castello*, 172 F.R.D. 103, 106 (S.D.N.Y. 1997) (dismissing fraud counts "erroneously premised on the notion" that one director and officer of a company, and a second director of that company, were "personally responsible for the representations of [that company]").

The false statement in the bill of lading — the contract at issue — does not support an independent cause of action because Plaintiff seeks the same compensatory damages for breach of contract.  Although Plaintiff also seeks punitive damages for his fraud claim that he does not seek for the breach of contract claim, (Am. Compl. ¶¶ 49, 68), these damages are an insufficient basis to render the fraud claim non-duplicative.  *ADYB Engineered for Life, Inc. v. Edan Admin. Servs. Ltd.*, No. 19-CV-7800, 2021 WL 1177532, at *22 (S.D.N.Y. Mar. 29, 2021) ("[P]unitive damages are, by definition, not 'caused by' fraud and therefore do not count as 'special damages' that would differentiate the fraud claim from the breach of contract claim."  (quoting *Magnacoustics, Inc. v. Integrated Comput. Sols., Inc.*, No. 17-CV-4967, 2020 WL 4041310, at *6 (E.D.N.Y. July 17, 2020))); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Monarch Payroll, Inc.*, No. 15-CV-3642, 2016 WL 634083, at *6 (S.D.N.Y. Feb. 17, 2016) ("[T]he First Department has held that the inclusion of a prayer for punitive damages is not a sufficient basis to allow a fraud claim that is based on the breach of a contract." (citing *Mosaic Caribe, Ltd. v. AllSettled Grp., Inc.*, 985 N.Y.S.2d 33, 35 (App. Div. 2014))).

However, Plaintiff's allegations that Defendants made false assurances that the cargo would be picked up after it arrived in Ashdod, (Am. Compl. ¶¶ 22, 24), and the specific factual

allegations that Overseas Moving made these false claims through its employees, including

Aviani, on specific dates through email, (*id.* ¶ 22; Email Correspondence), support a fraud claim

against Overseas Moving.  Plaintiff contends that the challenged statements were fraudulent

because Defendants knowingly misrepresented Tevel's intent to retrieve the cargo from the

dock.[12]  (*Id.* ¶ 66.)  These allegations of false statements about the status of the cargo when it

arrived in Ashdod are not duplicative of Plaintiff's contract claims because they were made after

the contract was formed.  *See CapLOC, LLC v. McCord*, No. 17-CV-5788, 2020 WL 1036044, at

*14 (S.D.N.Y. Mar. 3, 2020) ("A plaintiff may also bring parallel fraud and breach of contract

---

[12]  Defendants also argue that Plaintiff's fraud claim should be dismissed pursuant to the economic loss rule.  (Defs.' Mem. 16–18.)  The economic loss rule, which "is intended to maintain the distinction between tort law and contract law," "prohibits recovery under tort for economic losses which are not also accompanied by tangible, physical harm."  *Hunt Constr. Grp., Inc. v. Brennan Beer Gorman/Architects, P.C.*, 607 F.3d 10, 14 (2d Cir. 2010) (citing *Breslauer v. Fayston Sch. Dist.*, 163 Vt. 416, 421 (1995)).  Most district courts applying New York law "have declined to apply the economic loss rule to intentional torts" such as fraud, "citing the absence of any New York authority to the contrary" and noting "that New York courts have long 'routinely permitted' fraud claims for pure economic loss to proceed."  *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 432 (S.D.N.Y. 2017) (explaining that the minority of courts that have applied the economic loss rule to fraud claims under New York law "have relied solely on [*Orlando v. Novurania of America, Inc.*, 162 F. Supp. 2d 220, 226 n.2 (S.D.N.Y. 2001)], which, in turn, cited no authority for its conclusion, leading this [c]ourt and others to find it unpersuasive"), *modified on reconsideration*, No. 14-MC-2543, 2017 WL 3443623 (S.D.N.Y. Aug. 9, 2017); *see Sussman Sales Co. v. VWR Int'l, LLC*, No. 20-CV-2869, 2021 WL 1165077, at *11 n.16 (S.D.N.Y. Mar. 26, 2021) ("[A] number of courts in this [d]istrict have determined that New York's economic loss doctrine does not apply to intentional torts such as fraud, and have refrained from dismissing fraud claims on this basis." (first citing *Fed. Deposit Ins. Corp. ex rel. First NBC Bank v. Murex LLC*, No. 16-CV-7703, 2018 WL 2694431, at *8 (S.D.N.Y. June 5, 2018); and then citing *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 297 (S.D.N.Y. 2015) (collecting cases))); *Murex LLC*, 2018 WL 2694431, at *8 (noting "some division of authority among courts in this circuit . . . as to whether the economic-loss doctrine also bars [intentional fraud] claims" and concluding that, "[a]lthough this [c]ourt has previously followed *Orlando*, the [c]ourt's considered view, upon a fresh review of the case law and 'the absence of any contrary authority from the New York state courts,' is that New York's economic loss doctrine does not clearly bar intentional fraud claims." (citations omitted) (quoting *Weisblum*, 88 F. Supp. 3d at 297)).  Accordingly, the Court does not apply the economic loss rule to Plaintiff's fraud claim.

claims when there are '[m]isrepresentations of present facts made post-contract formation [that] are collateral or extraneous to the contract.'" (alterations in original) (quoting *Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504, 520 (S.D.N.Y. 2016))); *Rojas v. Cigna Health & Life Ins. Co.*, No. 14-CV-6368, 2018 WL 4759775, at *6 (S.D.N.Y. Sept. 29, 2018) (holding that the plaintiffs' claims that the defendants billed for medical tests they did not perform were properly brought as fraud claims and were not duplicative of the plaintiffs' breach of contract claims because the defendants allegedly concealed the actual price and nature of the tests each time they sent bills).

However, Plaintiff has not plausibly alleged Aviani's involvement in the alleged fraud. Plaintiff alleges that Aviani "personally directed" Overseas Moving's response to Plaintiff's claims because Aviani "instructed his staff" to tell Plaintiff that the cargo was not being abandoned. (Am. Compl. ¶ 24.) In support, Plaintiff alleges that Aviani was copied on an internal email about the shipment, in which he and others were asked to "advise," (*id.* ¶¶ 23–24), and that Aviani has professional ties to Tevel, (*id.* ¶¶ 20–21; Pl.'s Opp'n 16). However, Aviani's position at Overseas Moving and his inclusion on that email do not adequately support the inference that he is liable for the alleged fraud. *See Leon*, 992 F. Supp. 2d at 194 (granting the defendants' motion to dismiss "given the absence of any specific allegations as to [the corporate officer's] precise role as [p]resident . . . and his involvement in the alleged misconduct"); *Simon*, 172 F.R.D. at 106 (dismissing fraud counts "erroneously premised on the notion" that one director and officer of a company, and a second director of that company, were "personally responsible for the representations of [that company]"). Accordingly, Plaintiff has not sufficiently alleged Aviani's involvement in the alleged fraud, and the Court dismisses the fraud claims against him.

### c.   Plaintiff can pursue consequential damages

Defendants do not move to dismiss Plaintiff's contract claim but argue that Plaintiff is not entitled to consequential damages because (1) the contract does not provide for consequential damages or suggest that Plaintiff might suffer lost profits, (2) the parties did not contemplate lost profits when the contract was signed, and (3) the claim for lost profits is speculative.  (Defs.' Mem. 5–9.)  In addition, Defendants argue that Plaintiff's allegation that it lost significant business when it became unable to use Zim "defies logic" and Plaintiff has not alleged a single example of lost business.  (*Id.* at 6–7.)

Plaintiff argues that (1) Overseas Moving promised to pay "all" Plaintiff's "loss" or "losses" in the bill of lading, and because "[c]ontrolling law is that consequential damages are allowed unless specifically excluded," Plaintiff is entitled to recover them, and (2) its damages were foreseeable because (a) Defendants, who "are longstanding, sophisticated shipping professionals with knowledge of the shipping industry," knew that the consequence for abandoning cargo would be the loss of shipping rights with Zim, and (b) Plaintiff actually told them that its account with Zim was being suspended.  (Pl.'s Opp'n 6–9.)

### i.   Federal maritime law applies to Plaintiff's contract claim

"When a contract is a maritime one, and the dispute is not inherently local, federal law controls the contract interpretation."  *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 22–23 (2004).  A contract is a maritime contract when "the principal objective . . . is maritime commerce." *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 632 (2d Cir. 2016) (quoting *Kirby*, 543 U.S. at 25); *Kirby*, 543 U.S. at 27 ("Conceptually, so long as a bill of lading requires substantial carriage of goods by sea, its purpose is to effectuate maritime commerce — and thus it is a maritime contract.").  A maritime contract is inherently local where it "so implicate[s] local interests as to beckon interpretation by state law."  *Kirby*, 543 U.S. at 27

(citing *Kossick v. United Fruit Co.*, 365 U.S. 731, 735 (1961)); *see also Mediterranean Shipping Co. (USA) Inc. v. Am. Cargo Shipping Lines, Inc.*, No. 13-CV-6357, 2014 WL 4449796, at *4 (S.D.N.Y. Sept. 10, 2014) (applying federal maritime law to decide demurrage charges where "each of the transactions at issue involved international shipments of goods by sea" (citing *Nippon Yusen Kaisha v. FIL Lines USA Inc.*, 977 F. Supp. 2d 343, 349 (S.D.N.Y. 2013))).  In addition, "[w]hile the source of a court's subject matter jurisdiction may not always be dispositive on the question of what substantive law to apply, federal maritime law is usually applied when a federal court's maritime jurisdiction is invoked."  *In re M/V Rickmers Genoa Litig.*, 643 F. Supp. 2d 553, 555 (S.D.N.Y. 2009) (footnote omitted) (collecting cases).

Plaintiff contracted with Overseas Moving for a transoceanic shipment of goods from New York to Ashdod, Israel.  (Am. Compl. ¶ 19.)  Therefore, the bill of lading at issue is a maritime contract, the interpretation of which is governed by federal maritime law.  *See OOCL (USA) Inc. v. Transco Shipping Corp.*, No. 13-CV-5418, 2015 WL 9460565, at *4 (S.D.N.Y. Dec. 23, 2015) ("Federal courts apply federal common law when interpreting bills of lading for transoceanic shipments like the one here." (citing *Norfolk*, 543 U.S. at 22–23)); *see also Herod's Stone Design v. Mediterranean Shipping Co. S.A.*, 846 F. App'x 37, 39 (2d Cir. 2021) ("The [w]aybill is a maritime contract governed by federal maritime law, as its primary purpose was to transport goods by sea from China to California, and then, by amendment, by rail to New York.").

### ii.   Plaintiff can pursue and sufficiently alleges consequential damages

Although "[i]n admiralty cases, federal maritime law applies where it exists," *Mentor Ins. Co. (U.K.) Ltd. v. Brannkasse*, 996 F.2d 506, 513 (2d Cir. 1993) (first citing *Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 409–11 (1953); and then citing *Larios v. Victory Carriers, Inc.*, 316 F.2d

63, 65 (2d Cir. 1963)), a "[s]tate may modify or supplement the maritime law by creating

liability which a court of admiralty will recognize and enforce when the state action is not hostile

to the characteristic features of the maritime law or inconsistent with federal legislation,"

*Vasquez v. GMD Shipyard Corp.*, 582 F.3d 293, 301 n.3 (2d Cir. 2009) (quoting *Just v.

Chambers*, 312 U.S. 383, 388 (1941)); *see also CITGO Asphalt Ref. Co. v. Frescati Shipping

Co.*, 589 U.S. ---, ---, 140 S. Ct. 1081, 1088 (2020) ("[F]ederal maritime law includes general

principles of contract law." (alteration in original) (quoting 2 T. Schoenbaum, Admiralty &

Maritime Law § 11:2, at 7 (6th ed. 2018))); *Grubart*, 513 U.S. at 546 ("[A] fundamental feature

of admiralty law[] [is] that federal admiralty courts sometimes do apply state law." (first citing

*Am. Dredging Co. v. Miller*, 510 U.S. 443, 451–452 (1994); and then citing 1 S. Friedell,

Benedict on Admiralty § 112, at 7–49 (7th ed. 1994))).

Maritime law allows for the recovery of consequential damages, including lost profits, if

such damages are "a foreseeable result of the breach." *See E. River S.S. Corp. v. Transamerica

Delaval, Inc.*, 476 U.S. 858, 874 (1986) (explaining that "[t]he limitation [on liability] in a

contract action comes from the agreement of the parties and the requirement that consequential

damages, such as lost profits, be a foreseeable result of the breach" (citing *Hadley v. Baxendale*

(1854) 156 Eng. Rep. 145)); *Maizoro v. Sea-Land Serv., Inc.*, No. 96-CV-2979, 1999 WL

1009092, at *7 (N.D. Tex. Oct. 20, 1999) (stating that "the general maritime law does allow for

recovery of foreseeable damages, following the rule set forth in the famous English case of

*Hadley v. Baxendale*" and finding that genuine issues of fact existed as to whether consequential

damages including "compensation for lost profits" were foreseeable); *see also 9178-6103 Quibec

Inc. v. Unitrans-Pra Co.*, No. 09-CV-144, 2018 WL 5084820, at *3, *10 (E.D.N.Y. Oct. 17,

2018) (granting summary judgment in maritime breach of contract case where the plaintiff

requested damages including lost profits).  The Supreme Court's decision in *East River Steamship Corp.* suggests that where a maritime contract exists between two commercial parties, courts should apply ordinary principles of contract law to determine liability.  *E. River S.S. Corp.*, 476 U.S. at 874 (noting that contract law rather than tort law was "well suited to commercial controversies" such as the facts of that case, where ship turbines malfunctioned due to product defects and damaged only themselves, because it allowed the parties to allocate and limit liability in a product liability case and because "[t]he expectation damages available in warranty for purely economic loss give a plaintiff the full benefit of its bargain by compensating for foregone business opportunities"); *Crowley Marine Servs., Inc. v. Vigor Marine LLC*, 17 F. Supp. 3d 1091, 1096 (W.D. Wash. 2014) (examining the holding of *East River Steamship Corp.* and concluding that the Supreme Court's "intent [was] that traditional rules of contract apply where there is an actual contract" in maritime law).  The circuit courts that have addressed the issue have applied general principles of contract law in interpreting maritime contracts and have allowed for consequential damages, including lost profits.  *See Tex. A&M Rsch. Found. v. Magna Transp., Inc.*, 338 F.3d 394, 405 (5th Cir. 2003) (allowing consequential damages in a maritime contract dispute concerning the late delivery of specialized equipment, finding that the plaintiff was entitled to recover consequential damages "resulting from [its] attempts to secure an alternate means of delivering the cargo" because the defendant was on notice that timely delivery was important to the plaintiff); *Ildhuso Fisheries, Inc. v. Nichols Bros. Boat Builders, Inc.*, 1 F. App'x 659, 661 (9th Cir. 2001) (finding that consequential damages, including lost profits, were appropriate in the context of a contract for ship repair, where the parties "could have negotiated" but did not for "a global preclusion of consequential damages flowing from any work done").

Under New York law, a non-breaching party to a contract may recover consequential damages, or "damages beyond those which naturally and directly flow from the breach only when 'such unusual or extraordinary damages [were] brought within the contemplation of the parties as the probable result of a breach at the time of or prior to contracting.'" *Globecon Grp., LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 176 (2d Cir. 2006) (alteration in original) (quoting *Kenford Co. v. County of Erie* (*Kenford II*), 73 N.Y.2d 312, 319 (1989)); *see also Judd Burstein, P.C. v. Long*, 797 F. App'x 585, 588 (2d Cir. 2019) (same).  While "[t]here is significant New York authority for the proposition that a party seeking consequential damages must identify specific contractual provisions demonstrating that recovery of such damages was contemplated by the parties," "some authority suggests that no specific provision is required," although an award of consequential damages must still "comport with the intent of the parties to the contract."  *Globecon Grp., LLC*, 434 F.3d at 176; *see also Lava Trading Inc. v. Hartford Fire Ins. Co.*, 326 F. Supp. 2d 434, 441 (S.D.N.Y. 2004) (reviewing Appellate Division cases and concluding that they do not require "a specific provision or language permitting the recovery of consequential damages"); *Martin v. Metro. Prop. & Cas. Ins. Co.*, 656 N.Y.S.2d 318, 319 (App. Div. 1997) ("Here it was neither foreseeable nor within the contemplation of the parties at the time of contract that failure to pay loss of use benefits would result in foreclosure and the consequential damages flowing therefrom.  Nor does the contract of insurance contain any language which permits recovery for consequential damages." (citing *High Fashions Hair Cutters v. Com. Union Ins. Co.*, 535 N.Y.S.2d 425 (App. Div. 1988))).

In New York, "lost profits constitute consequential damages 'when, as a result of the breach, the non-breaching party suffers loss or profits on collateral business relationships.'" *Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*, 976 F.3d 239, 244 (2d Cir.

2020).[13]  "[A] party is entitled to recover this form of lost profits only if (1) it is demonstrated

with certainty that the damages have been caused by the breach, (2) the extent of the loss is

capable of proof with reasonable certainty, and (3) it is established that the damages were fairly

within the contemplation of the parties." *Id.* (citing *Kenford Co. v. Erie County* (*Kenford I*), 67

N.Y.2d 257, 261 (1986)); *Bi-Economy Mkt., Inc. v. Harleysville Ins. Co.*, 10 N.Y.3d 187, 192–93

(2008) (same).  Where a contract does not expressly discuss lost profits, "the court must take a

'common sense' approach, and determine what the parties intended by considering 'the nature,

purpose and particular circumstances of the contract known by the parties . . . as well as what

liability the defendant fairly may be supposed to have assumed consciously.'"  *Schonfeld v.

Hilliard*, 218 F.3d 164, 172 (2d Cir. 2000) (quoting *Kenford II*, 73 N.Y.2d at 319); *see also Atl.

Forwarding, Ltd. v. MSL Int'l, L.L.C.*, No. 13-CV-209, 2013 WL 5345346, at *4–5 (S.D.N.Y.

Sept. 24, 2013) (holding that a plaintiff is entitled to recover damages "such as may reasonably

be considered either arising naturally . . . from such breach . . . or such as may reasonably be

supposed to have been in the contemplation of both parties . . . as the probable result of the

breach." (quoting *Hadley*, 156 Eng. Rep. 145)).

    Applying the governing maritime law on consequential damages, as supplemented by

New York law where it is consistent with maritime law, the Court finds that Plaintiff can pursue

a claim for consequential damages in the form of lost profits from the loss of its business

relationship with Zim.  Plaintiff alleges that the lost profits from its loss of the ability to ship

with Zim were foreseeable to Overseas Moving because, as an NVOCC, Overseas Moving is

---

    [13]  Lost profits may also be general damages when they are "the direct and probable
consequence of the breach" for which the non-breaching party bargained.  *See Tractebel Energy
Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 109 (2d Cir. 2007).  Plaintiff does not
contend that its alleged lost profits are general damages.

familiar with the maritime industry and had every reason to know of the commercial

consequences that an NVOCC might suffer if it abandoned cargo and failed to pay an ocean

carrier.  (Am. Compl. ¶ 15 ("As shipping professionals, [Defendants] are aware that a shipper's

failure to perform its obligations under a shipping contract can result in significant charges

against a shipper by the ocean carrier, customs officials and owner of the shipping container.").)

Based on these allegations, Plaintiff has plausibly alleged that the claimed consequential

damages were foreseeable and within the contemplation of the parties at the time the parties

signed the contract.  *See Sabbeth Indus. Ltd. v. Pa. Lumbermens Mut. Ins. Co.*, 656 N.Y.S.2d

475, 477 (App. Div. 1997) (concluding that consequential damages were foreseeable based on

"[t]he very purpose of business interruption coverage").  Further, the parties could have

contracted to exclude consequential damages but did not.  *See Ildhuso Fisheries*, 1 F. App'x at

661.

        While Defendants challenge Plaintiff's allegations that loss of business was a foreseeable

consequence of the abandonment of cargo at the port of arrival as speculative, the Court's role at

this stage is not to determine the strength of Plaintiff's evidence but whether the allegations, if

true, can support a claim.  *See Evergreen Line A Joint Serv. Agreement FMC No. 011982 v. US

Dynamics Recycling LLC*, No. 18-CV-313, 2018 WL 6313607, at *4 (S.D.N.Y. June 12, 2018)

(rejecting the defendant's argument that "the damages alleged are too remote to be foreseeable

under the contract" because "[s]uch an inquiry is not appropriate" at the motion to dismiss stage

"[g]iven the complexity and scope of the shipping industry" (citing *Millgard Corp. v. E.E.

Cruz/Nab/Fronier-Kemper*, No. 99-CV-2952, 2003 WL 22801519, at *2 (S.D.N.Y. Nov. 24,

2003))); *Millgard Corp.*, 2003 WL 22801519, at *2 ("The scope of permissible consequential

damages is an issue which must await the presentation of evidence as to what were the foreseeable consequences of wrongful termination.").

Similarly, the Court finds unpersuasive Defendants' argument that Plaintiff's claim for lost profits based on its loss of business with Zim is implausible.  In support of this argument, Defendants contend that Plaintiff only lost access to a single shipper and did not provide a specific example of Plaintiff's lost business.  However, as discussed above, at this stage of the litigation Plaintiff is not required to prove lost profits, only to plausibly allege that it has incurred damages in the form of lost profits.  *See Evergreen Line A Joint Serv. Agreement FMC No. 011982*, 2018 WL 6313607, at *4 (rejecting as prematurely raised the argument "that it is implausible that such an arguably small mistake — a truck driver entering the wrong container drop-off lane — could result in the substantial fines and penalties imposed by the [p]ort"); *Koch Indus., Inc. v. Aktiengesellschaft*, 727 F. Supp. 2d 199, 220 (S.D.N.Y. 2010) ("Although plaintiffs may ultimately have difficulty establishing lost profits damages that are not speculative, the issue raises questions of fact that cannot be resolved at summary judgment."). Plaintiff's factual allegations that it had a business relationship with Zim, lost it because of Defendants' unwillingness to declare the cargo abandoned after Tevel failed to collect the cargo, then regained shipping privileges with Zim after it paid the container fees are more than speculative.  (Am. Compl. ¶¶ 30–36); *see Great Lakes Bus. Tr. v. M/T Orange Sun*, 523 F. App'x 780, 782 (2d Cir. 2013) (explaining, in a maritime tort case, that the plaintiffs were not required to demonstrate that a vessel had lost a specific contract in order to recover damages, because there was an active market for the vessel's services); *cf. ACCD Glob. Agric. Inc. v. Perry*, No. 12-CV-6286, 2013 WL 840706, at *2 (S.D.N.Y. Mar. 1, 2013) ("[P]laintiffs' complaint here simply asserts that plaintiffs 'would [have made] over $1 million per year in profits' — and

makes no other proffer whatsoever concerning that allegation.  This is insufficient to support a claim for lost profits, even at the motion to dismisss stage." (second alteration in original)).

Accordingly, the Court denies Defendants' motion to dismiss Plaintiffs' claim for consequential damages.

## III.  Conclusion

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion to dismiss.  The Court grants Defendants' motion and dismisses Plaintiff's negligent misrepresentation claim against both Defendants, all fraud claims against Aviani, and the bill of lading fraud claim against Overseas Moving but denies the motion as to Plaintiff's fraud claim based on Overseas Moving's statements after the cargo arrived in Ashdod.  The Court also finds that Plaintiff may pursue consequential damages.

Dated: August 30, 2021
        Brooklyn, New York

                              SO ORDERED:


                              ____s/ MKB_____
                              MARGO K. BRODIE
                              United States District Judge